IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CR3154 |
| | ) | |
| v. | ) | |
| | ) | |
| TONY T. PEREZ, | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

    This matter is before me for initial review[1] of the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 motion") filed by the defendant, Tony T. Perez (filing 59). Summarized and condensed, the defendant has three claims and they are: (1) evidence that would have allowed the defendant to get a lighter sentence was not presented by defense counsel; (2) the defendant's lawyer did not provide the defendant with a copy of the tape of the wired buy so the defendant could listen to it; and (3) the defendant's lawyer told him to take responsibility for 500 grams of methamphetamine despite the fact that charging document alleged 50 grams or more. No matter how it is construed, the motion is insufficient and the files and records conclusively disprove the claims. Thus, the motion will be denied.

---

    [1] Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

## I.  BACKGROUND

Tony Perez, a likeable young man, is serving 97 months in prison as a result of a guilty plea to conspiracy to distribute 50 grams or more of methamphetamine between January 1, 2004 and August 20, 2007. (Filing 32 (information); filing 53 (judgment).) On June 26, 2008, Perez received a low-end Guidelines sentence after I determined that he was responsible for at least 500 grams but less than 1.5 kilograms of methamphetamine thus establishing a base offense level of 32. (Filing 51 (presentence report); filing 54 (statement of reasons).) After three points for acceptance of responsibility were deducted, his total offense level was set at 29 and his criminal history category was found to be II. Those findings provided an advisory sentencing range of 97 to 121 months in prison.

Perez admits that he did not appeal. (Filing 59 at CM/ECF pp. 4-7). Even though he claims, without much detail, that he was told he could not appeal, the record establishes that he was specifically apprised both verbally (filing 49 at 7:33 and following (audio file)) and in writing (filing 50 (notice of right to appeal signed by Perez)) about all aspects of his right to appeal. Furthermore, the plea agreement did not contain an appeal waiver so there is no reason to think that anyone would have told him that he could not appeal. (Filing 38.) Thus, to the extent that Perez raises claims unrelated to the performance of his lawyer, those claims must be denied because a post-conviction action generally cannot be used as a substitute for appeal and Perez has presented no concrete facts that would justify the failure to take a direct appeal. *See, e.g., Reid v. United States*, 976 F.2d 446, 447-48 (8th Cir. 1992) (a defendant is barred from bringing an action under 28 U.S.C. § 2255 for errors not presented in a direct appeal and to which no contemporaneous objection were made unless he can show both (1) cause excusing his procedural default, and (2) actual prejudice resulting from the errors of which he complains).

Pursuant to a court-appointment, Perez was represented by Dana M. London. Mr. London is an able and experienced criminal defense lawyer. London had his work cut out for him because the evidence of the defendant's guilt was strong. For example, the government had eye-witness testimony from a "controlled buy" establishing that Perez sold 13.18 grams of methamphetamine to an informant for which he charged and received $600. (Filing 51 at CM/ECF p. 5 ¶ 15.)

With the help of London, Perez entered into a plea agreement. The plea agreement, which called upon Perez to cooperate with the government in the hopes of later receiving a sentence reduction, stated the following regarding drug quantity: "The parties agree that the Defendant should be held responsible beyond a reasonable doubt for at least 500 to 1.5 kilograms and, therefore, pursuant to U.S.S.G. § 2D1, the Defendant's base offense level is 32." (Filing 38 at CM/ECF pp. 1-2 ¶ 2.c.)

As the probation officer later noted, the plea agreement amounted to a concession on the part of the government. The government had two witnesses who were willing to implicate the defendant in approximately 2.4 kilos of methamphetamine. (Filing 51 at CM/ECF p. 5 ¶ 17.) Had the government proved 2.4 kilos at a sentencing hearing, the defendant's base offense level would have been 34 rather than 32. Nonetheless, the probation officer, who reviewed the investigative reports and who spoke with the prosecutor, concluded that it was "appropriate for the parties to enter into an agreement holding the defendant responsible for at least 500 grams but less than 1.5 kilograms of methamphetamine." (*Id.*)

There is little doubt that Perez understood the plea agreement and there is little doubt that the drug quantity stipulation was factually well-founded. Initially, the plea agreement was in writing and signed by the defendant. (Filing 38 at CM/ECF p. 6.) Still further, in his written petition to enter a plea of guilty the defendant stated in his own handwriting that the reason he entered into the plea agreement was "to get

the benefit of the plea agreement" and a possible "reduced sentence for my cooperation." (Filing 37 at CM/ECF p. 12 ¶ 35c.)

Moreover, when I questioned the defendant under oath at the time of his plea hearing, it was apparent that Perez fully understood and agreed with the stipulation regarding drug quantity. For example, after the lawyers summarized the plea agreement, including especially the stipulation regarding the drug quantity (filing 36 at 16:40 and following (audio file)), Perez said he agreed with the lawyers regarding the terms of the agreement. (*Id.* at 18:19 and following.)  Perez also told me that he had read the plea agreement, that his lawyer explained the plea agreement to him before he signed it, and that he believed he understood the plea agreement. (*Id.* at 15:14 and following.)  Additionally, Perez admitted that he was involved in a drug conspiracy that spanned several years and involved at least 50 grams or more of methamphetamine (*id.* at 20:30 and following) thus establishing that Perez had good reason to enter into the agreement fixing the drug quantity.

Perez always had positive things to say about his lawyer, Dana London.  For example, at the plea hearing, Perez explicitly stated that he was satisfied with the performance of defense counsel. (Filing 36 at 7:04 and following (audio file).)  At sentencing, Perez went even further and stated:  "[A]s for my lawyer, I appreciate everything you have done for me" and "you are good man and good lawyer." (Filing 49 at 5:10 and following (audio file).)

In a letter that was sent to the undersigned, but filed in the court file, Perez provides some background for the claims that he later made in his 2255 motion. (Filing 57.)  The statements made in the letter are not made under penalty of perjury and the factual assertions he makes in the letter are not repeated in his 2255 motion which is made under penalty of perjury.  With this reservation noted, Perez explained in his letter why he wanted to file a 2255 motion:

. . . I was not properly assisted by my lawyer before I got sentenced. I am charged on a conspiracy to distribute meth. With charges facing 5 to 40 years, for no more then [*sic*] 50 grams of meth.

While I was awaiting sentencing there was evidence found on the wittnesses [*sic*] who told on me. That 2 of the main wittnesses [*sic*] in my case were caught lieing [*sic*].

However, this was not brought to my attention untill [*sic*] after I was sentenced and sent to the Leavenworth, Kansas CCA. And I would have never found this information out if I wouldn't have co-operated [*sic*] with the Federal Government.

While I was in the Leavenworth, Kansas CCA, I was pulled back to the state of Nebraska to be prepared for a trial. That's when I found out that they had changed the Federal Prosecutor from Bruce Gillian [*sic*], to Matt Moleson [*sic*] in my case.

When Prosecutor Matt Molesen [*sic*] arrived to prep me for this trial. [*sic*] He also brought Investigator Mark Dreher out of Grand Island, Nebraska.

On there [*sic*] arrival I was prepared for the trial. It is when I asked the prosecutor Mr. Matt Moleson [*sic*] how my co-ooperation [*sic*] was going, as well as my case. He tells me everythings [*sic*] good, but that they caught the main witnesses in my case lieing [*sic*].

I then asked him if my Lawyer Dana London knew anything about this, [*sic*] his response was I'm pretty sure he did.

So I then came back to my unit, which were [*sic*] I was being housed and called my lawyer Dana London to ask if he knew about that information. He then tells me, "yes" that he knew about this before I got sentenced, but that there was nothing we could do about it now!

> If I would of known this information before I got sentenced I would have filed a motion to have a [*sic*] evidentiary hearing, or have a wieght [*sic*] trial.

(Filing 57 at CM/ECF pp. 1-2.)

## *II. ANALYSIS*

In order to prevail on his claims that defense counsel rendered ineffective assistance of counsel, Perez must show that "'counsel's representation fell below an objective standard of reasonableness,'" and that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). The Court of Appeals has applied these precepts to situations involving plea negotiations and plea agreements. *See*, *e.g.*, *United States v. Regenos*, 405 F.3d 691, 693 (8th Cir. 2005) (affirming denial of 2255 motion without a hearing where the defendant claimed that counsel was ineffective for failing to inform her of the terms of a modified plea agreement that she entered into with the government; the modified plea agreement called for a longer sentence than the prior plea agreement). In particular, a defendant must show that there is a reasonable probability that but for counsel's errors "the result of the plea negotiation process would have been different." *Id.*

Furthermore, an evidentiary hearing is unnecessary if the defendant makes an insufficient preliminary showing on either or both prongs. *See*, *e.g.*, *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim). In particular, no evidentiary hearing is required in cases involving the allegation of ineffective assistance of counsel where: (1) the allegations accepted as true would not entitle the defendant to relief or (2) the allegations cannot be accepted as true because

they are (a) contradicted by the record or (b) inherently incredible or (c) conclusions rather than statements of fact. *Regenos*, 405 F.3d at 694.

Regarding Perez's first claim that counsel rendered ineffective assistance of counsel because the lawyer failed to present evidence that would have allowed the defendant to get a lighter sentence, there are several reasons why that claim must be rejected. Initially, there are no specifics in the 2255 motion to back up the conclusions. Even if I take the defendant's unsworn letter as fleshing out the 2255 motion, it is still insufficient. Assuming that it is true that London later learned that two witnesses had lied about the defendant, this does not mean that the drug quantity stipulation that Perez signed resulted in a greater sentence than would have been the case had no such stipulation been reached. After all, Perez, who knew more than anyone else about his own drug dealing, agreed in writing to the quantity. In fact, he agreed that he was responsible for the quantity "beyond a reasonable doubt." In short, Perez provides no reason to disbelieve his own admission. Still further, the government agreed to a base offense level (32) that was significantly less than the level (34) that would have applied had the cooperators' testimony about drug quantity been accepted at face value. Thus, there is no reason to think that a fight about drug quantity would have netted Perez a better result even if it is true that the witnesses "put too much weight on" him. Stated differently, the record establishes that Perez got the benefit of the government's discount of the witnesses' statements. Perez has failed to provide any reason to believe that he was entitled to more.

The defendant's remaining two claims may be resolved even more briefly. Regarding the second claim that his lawyer failed to provide him with a tape of the "buy," there is no showing or reason to believe that such an omission, if it occurred, amounted to malpractice or makes any difference. The final claim–that the defendant's lawyer erred when he told the defendant to take responsibility for 500 grams of methamphetamine because the charging document alleged only 50 grams or more–is built upon a fallacy. The allegation in the charging document of 50 grams

or more triggers a statutory minimum sentence, but that allegation does not mean that Perez was responsible for only 50 grams or some quantity less than 500 grams.

IT IS ORDERED that the defendant's 2255 motion (filing 59) is denied with prejudice. A separate judgment will be issued.

DATED this 25th day of March, 2009.

BY THE COURT:

*s/Richard G. Kopf*
United States District Judge